MICHIGAN BELL TELEPHONE COMPANY v
DEPARTMENT OF TREASURY

Docket Nos. 95347-95349. Argued December 3, 1993 (Calendar No. 12). Decided June 21, 1994. Rehearing denied 446 Mich 1201. Certiorari denied by the Supreme Court of the United States on November 28, 1994, 513 US — (1994).

Michigan Bell Telephone Company challenged the State Board of Assessors valuation of its property subject to taxation under 1905 PA 282, MCL 207.1 *et seq.*; MSA 7.251 *et seq.,* as improperly including intangible property in the valuations for tax years 1984, 1985, and 1986. The Tax Tribunal modified the assessment for each year and concluded that its consideration of the intangible elements under the unit valuation method was consistent with the constitution and statutes. The Court of Appeals, Hood, P.J., and Wahls and McDonald, JJ., affirmed in an unpublished memorandum opinion (Docket Nos. 127402, 131780, 133117). The petitioner appeals.

In a unanimous opinion by Justice Griffin, the Supreme Court *held:*

The petitioner's intangible personal property appropriately was taken into account for purposes of assessment and taxation under 1905 PA 282.

1. 1905 PA 282 provides that the term "property" includes all property, real or personal, belonging to a public service company such as the petitioner that is subject to taxation under the act. The usual and customary meaning of property includes intangibles, and the Legislature did not limit application to tangible personal property. Thus, "all property" conveys an unambiguous meaning and provides authority for inclusion of both tangible and intangible property in the valuation and assessment of property under 1905 PA 282.

2. The intangibles tax act, 1939 PA 301, does not preclude consideration of intangibles in valuing and assessing property for purposes of taxation under 1905 PA 282. Rather, § 3(10) of

REFERENCES

Am Jur 2d, State and Local Taxation § 197.

See ALR Index under Intangible Hereditaments or Property; Taxes; Telecommunications.

the intangibles tax act expressly exempts intangible personal property from general property taxes, not a selective tax like 1905 PA 282.

3. Nor is taxation of intangible property unconstitutional under Const 1963, art 9, § 5. Art 9, § 5 does not distinguish between tangible and intangible property, and its language is consistent with the treatment historically accorded public service companies under 1905 PA 282.

Affirmed.

TAXATION — TELEPHONE COMPANIES — INTANGIBLE PROPERTY.

The intangible personal property of a telephone company may be taken into account for purposes of assessing and taxing its property under 1905 PA 282 (1905 PA 282, MCL 207.1 et seq.; MSA 7.251 et seq.).

*Honigman, Miller, Schwartz & Cohn* (by *Michael B. Shapiro, James K. Robinson,* and *Gerard Mantese*) for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Russell E. Prins* and *Ross H. Bishop,* Assistant Attorneys General, for the respondent.

GRIFFIN, J. This appeal requires us to determine whether intangible personal property of the petitioner, Michigan Bell Telephone Company (MBTC), was properly considered in the valuation and assessment of its property subject to taxation under 1905 PA 282, MCL 207.1 et seq.; MSA 7.251 et seq. Because we conclude that intangibles were appropriately taken into account for purposes of assessing and taxing petitioner's property under Act 282, we affirm the decisions of the Michigan Tax Tribunal and the Court of Appeals.

I

Act 282 requires an annual assessment by the State Board of Assessors of the property of certain public service businesses, including telephone com-

panies, and the levy each year of taxes thereon.[1]
At issue in this case is the value determination of
property in Michigan owned by petitioner as an
operating telephone system and the extent to
which it is taxable under Act 282 for the tax years
1984, 1985, and 1986.[2]

Challenging the board's assessments for those
years, petitioner appealed to the Tax Tribunal.[3]
After hearing twenty days of testimony, including
each party's expert appraisal witnesses, the tribu-
nal issued an opinion and judgment that culmi-
nated in modifications of the assessments for the
years in question.[4] In reaching its decision, the

[1] The title of Act 282 reads:

> An act to provide for the assessment of the property, by
> whomsoever owned, operated or conducted, of railroad compa-
> nies, union station and depot companies, telegraph compa-
> nies, *telephone companies,* sleeping car companies, express compa-
> nies, car loaning companies, stock car companies, refrigerator
> car companies, and fast freight companies and all other compa-
> nies owning, leasing, running or operating any freight, stock,
> refrigerator, or any other cars, not being exclusively the prop-
> erty of any railroad company paying taxes upon its rolling
> stock under the provisions of this act, over or upon the line or
> lines of any railroad or railroads in this state, and for the levy
> of taxes thereon by a state board of assessors, and for the
> collection of such taxes, and to repeal all acts or parts of acts
> contravening any of the provisions of this act. [Emphasis
> added.]

[2] The tribunal noted that before January 1, 1984, MBTC was owned
by American Telephone and Telegraph, that on that date, consistent
with a federal consent decree requiring divestiture by AT&T of certain
operating telephone companies, seven regional holding companies
were established, one of which was American Information Technolo-
gies Corporation (Ameritech), and that MBTC became a wholly owned
subsidiary of Ameritech.

[3] Petitioner claimed that the assessment of its property pursuant to
Act 282 for each of the tax years 1984, 1985, and 1986 was in excess
of fifty percent of the property's true cash value. See Const 1963, art
9, §§ 3 and 5.

[4] The 1984 assessment of $1,695,500,000 was reduced by $138,616,850;
the 1985 assessment of $1,590,000,000 was reduced by $200,610,200;
and the 1986 assessment of $1,650,000,000 was increased by $56,061,300.
(Docket No. 90553, March 13, 1990, p 66.)

tribunal determined, in accord with what it described as the "generally accepted mode of valuation for utility property," that petitioner's property should be assessed as a "unit" to reflect its "going concern" value. (Docket No. 90553, March 13, 1990, p 4.)

The tribunal explained:

> The exemplification of the going concern concept is found in the telephone pole, which is of very little intrinsic worth without the franchise to operate it legally. The value of that franchise, in large part, brings value to that pole, not the pole itself; a so-called "synergy" occurs. It therefore follows that the franchise and other unquantifiable intangibles are essential and valuable components of certain real· and personal tangible property (e.g., poles/wires) and, unless otherwise prohibited, must be included in the valuation of the tangible property. [Docket No. 90553, March 13, 1990, p 7.]

The tribunal concluded that its consideration of "the intangible elements of the going concern under the unit valuation method [is] consistent with the Michigan constitutional and statutory framework." *Id.,* p 13.

Petitioner appealed in the Court of Appeals and argued, inter alia, that the tribunal had improperly included intangible property in its valuations for the three years at issue. Adopting the opinion of the tribunal as its own, the Court of Appeals affirmed in an unpublished memorandum opinion, issued November 6, 1992 (Docket Nos. 127402, 131780, and 133117).

We then granted leave to appeal, "limited to whether the tax provided for under 1905 PA 282, MCL 207.1 *et seq.*; MSA 7.251 *et seq.*, permits the valuation of intangible personal property for assessment and taxation purposes." 443 Mich 884 (1993).

II

A brief history of Michigan's taxation of telephone companies was provided by the United States Supreme Court in *Citizens' Telephone Co of Grand Rapids v Fuller*, 229 US 322, 325; 33 S Ct 833; 57 L Ed 1206 (1913):

> Prior to 1909 telephone companies were taxed under Act No. 179 of the Public Acts of Michigan . . . at the rate of 3% on their gross receipts for the year in which the tax was laid. . . . The taxes paid were in lieu of all other taxes.
>
> Act No. 282 of the Public Acts of 1905 . . . provided for the assessment of the property of railroads and certain other companies and for the levying of taxes thereon by a State Board of Assessors. The act did not include either telephone or telegraph companies.
>
> In 1909 the legislature passed Act No. 49 . . . , which amended the title and certain sections of the Act No. 282 and provided for the assessment by the State Board of Assessors of the property of telephone companies on an ad valorem basis instead of a tax on their gross earnings, as provided by the act of 1899.

As petitioner has correctly explained, most of the property in Michigan that is subject to ad valorem (i.e., value based) taxation is valued and taxed by local units of government pursuant to the General Property Tax Act, 1893 PA 206, MCL 211.1 *et seq.*; MSA 7.1 *et seq.* However, certain public service businesses, including railroad and telephone companies, which typically have property interests that extend through several taxing districts or states, are taxed separately under Act

282 "in lieu of all taxes for state and local purposes . . . ."[5]

Under this statutory arrangement, all of the property of a telephone company "used in carrying on [its] business"[6] is assessed each year—not by a local township supervisor or assessor, but rather—by a central authority, i.e., the State Board of Assessors.[7] Act 282 requires that such property be assessed at fifty percent of its true cash value, and taxed "at the average rate of taxes for state, county, township, school, municipal and other purposes levied through this state during the preceding year . . . ."[8]

Although petitioner challenges the amount of the assessment for each of the years in question, it does not dispute the tribunal's use in this case of the "capitalization of income" method of valuing its property.[9] Moreover, petitioner states that the valuation of its real and personal property as a "unit," reflecting its use as a "going concern," is "not at issue here." According to petitioner, the "sole issue" is the "incorporation of intangibles" in the determination of the value of its property for Act 282 purposes.

In support of its position that the tribunal improperly included intangible property, rather than valuing and taxing only the real and *tangible* personal property of the company, petitioner ad-

[5] Act 282, § 14.

[6] Act 282, § 10.

[7] Act 282, § 1 provides: "The board of state tax commissioners . . . together with the governor, shall ex officio, constitute a state board of assessors . . . ."

[8] Act 282, § 14.

[9] As this Court explained in *Antisdale v City of Galesburg,* 420 Mich 265, 276; 362 NW2d 632 (1984), the "income" or "capitalization of income" approach is one of three basic techniques used in determining the true cash value of property that have been recognized by the Tax Tribunal and the courts. The other two are (1) the market approach, and (2) the cost-less-depreciation approach.

vances three arguments. It contends, first, that Act 282 does not authorize taxation of intangible personal property; second, that the intangibles tax act[10] exempts its intangibles from Act 282 taxation; and, finally, that taxation of its intangible property is unconstitutional in light of Const 1963, art 9, § 5.

Before addressing each of these arguments, we take note of the applicable standard of appellate review. In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. *Continental Cablevision v Roseville,* 430 Mich 727, 735; 425 NW2d 53 (1988).

III

According to the petitioner, its "basic argument" is "that Act 282 does not authorize the taxation of intangible property . . . ."

Section 4 of Act 282 provides in pertinent part that the State Board of Assessors shall "make an annual assessment . . . of the *property* . . . [of] telephone companies . . . ." Thereafter, § 5 of the act provides in pertinent part:

The term *property,* as used in this act, shall be deemed to include *all property,* real or personal, belonging to . . . companies . . . subject to taxation under this act, including . . . telephone poles, wires, conduits, switchboards, *and all other property* used in carrying on their business and owned by them respectively, and *all other real and personal property,* and all franchises, said franchises not to be directly assessed, but to be taken into

10 1939 PA 301, MCL 205.131 *et seq.*; MSA 7.556(1) *et seq.*

consideration in determining the value of the other property . . . . [Emphasis added.]

Petitioner argues for its interpretation of the act by pointing to a tenet of statutory construction recently restated by this Court in *Molter v Dep't of Treasury,* 443 Mich 537, 543; 505 NW2d 244 (1993), i.e., the authority to impose a tax must be expressly authorized by law; it will not be inferred. Moreover, ambiguities in the language of a tax statute are to be resolved in favor of the taxpayer. *In re Dodge Bros,* 241 Mich 665, 669; 217 NW 777 (1928).

When the case of *In re Brackett Estate,* 342 Mich 195, 204; 69 NW2d 164 (1955), came before this Court, we were required to consider the meaning of the word "property" within the context of the inheritance tax act.[11] There, we determined that an employee's interest in a profit-sharing plan established by his employer fell within the ambit of "property" as defined by the Legislature. Noting that the language used in the statute was "broad" and sweeping,[12] we said, "It is clearly within the competence of the legislature to sweep within its taxable orbit all kinds of property and any and all kinds of interests therein." *Id.,* p 205. We also observed:

---

[11] 1899 PA 188, MCL 205.201 *et seq.*; MSA 7.561 *et seq.* The act was recently amended by 1993 PA 54.

[12] The inheritance tax act in effect at the time this Court decided *Brackett* defined property as follows:

The word . . . "property" as used in this act . . . shall include *all property* or interest therein whether situated within or without this state and including all property represented or evidenced by note, certificate, stock, land, contract, mortgage or other kind or character of evidence thereof, and regardless of whether any such evidence of property is owned, kept or possessed within or without this state. [1948 CL 205.221; MSA 7.582. Emphasis added.]

> Nor will it be forgotten, in any question of statutory tax interpretation, that taxing is a practical matter and that the taxing statutes must receive a practical construction. While they will not be extended by implication, . . . neither will the words thereof be so narrowly interpreted as to defeat the purposes of the act. [*Id.*]

In construing the meaning of language of Act 282, we are cognizant of the principle that, in the absence of contrary direction by the Legislature, words used in a statute are to be given their ordinary meaning. *Sanchick v State Bd of Optometry,* 342 Mich 555, 559; 70 NW2d 757 (1955). ("Words will be given their usual and customary meanings, *save as otherwise defined . . . .*" [Emphasis added.])

In the course of considering whether the term property is "otherwise defined" in Act 282, we take note of its usual and customary meaning as reflected in Black's Law Dictionary. There, the word "property" is defined as denoting "everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal . . . ." 6th ed, p 1216. Another common definition of property is "[s]omething tangible or intangible to which its owner has legal title." *The American Heritage Dictionary* (2d college ed), p 993.

As earlier indicated, § 5 of Act 282 states that the term property "shall be deemed to *include all property,* real or personal" belonging to the business service companies subject to taxation under the act. Of course, the statutory definition of a term is controlling, but only to the extent that it provides instruction with regard to proper construction. We note that § 5 gives guidance regarding what is to be *included* in the assessment—but only by referring to "property" repeatedly

throughout the section without providing a separate definition of the word "property." Because "property" is not "*otherwise* defined" in § 5, we do not find it necessary to discard the usual and customary meaning of the word.

Moreover, as one authority has explained, where a term is defined by declaring what it "includes," it is susceptible to extension of meaning by construction. 2A Singer, Sutherland Statutory Construction (5th ed), § 47.07, pp 151-156. When used in a statutory definition, the word "includes" is a term of enlargement, not of limitation. It "conveys the conclusion that there are other items includable, though not specifically enumerated . . . ." *Id.,* p 152. Such a definition suggests, if not requires, a construction broad enough to encompass other items not explicitly mentioned.

As we read the language of § 5 of Act 282, we find that the Legislature left no doubt that it intended a broad construction of the word property. Its definition in the first sentence of that section includes no less than three separate references to *all* property:

> The term property . . . include[s] *all property,* real or personal . . . *and all other property* used in carrying on their business . . . *and all other real and personal property* . . . . [Emphasis added.]

Given that the usual and customary meaning of property includes intangibles, and noting that the Legislature deliberately chose not to use the limiting term "*tangible* personal property" (cf. Const 1963, art 9, § 3), we conclude that the Legislature intended intangible as well as tangible property to be covered by its § 5 definition of "property." We find that the Legislature's use of the words "all

property" conveyed a meaning that is unambiguous and provides authority for inclusion of both tangible and intangible property in the valuation and assessment of property for purposes of taxation under Act 282.[13]

Our interpretation of the words "all property" is not only justified by the arrangement and use of language in Act 282, but we observe that it also comports with the "unit concept" of valuing utility property used by the Tax Tribunal in this case. This method of valuing utility property has been recognized by courts for more than one hundred years. In *Adams Express Co v Ohio State Auditor,* 165 US 194, 220; 17 S Ct 305; 41 L Ed 683 (1897), the United States Supreme Court stated:

> As to railroad, telegraph and sleeping car companies, engaged in interstate commerce, it has often been held by this court that their property, in the several States through which their lines extended, might be *valued as a unit* for purposes of taxation, taking into consideration the uses to which it was put and all the elements making up aggregate value, and that a proportion of the whole fairly and properly ascertained might be taxed by the particular State . . . . [Emphasis added.]

The appropriateness of the unit method of valuing utility property was first recognized by this Court at the turn of the century. *Detroit Citizen's Street-Railway Co v Detroit Common Council,* 125

---

[13] Our construction is reinforced by the reference in § 5 of Act 282 to a franchise as property. While providing that a franchise is not to be directly assessed, Act 282 explicitly requires that this intangible property interest is to "be taken into consideration in determining the value of the other property." See *Duluth, SS & A R Co v Corp & Securities Comm,* 353 Mich 636, 666; 92 NW2d 22 (1958).

Mich 673; 85 NW 96 [86 NW 809] (1901).[14] More-over, it has long been established that the assessment of utility property as a unit requires consideration of intangibles. For example, in *Adams Express Co v Ohio State Auditor (After Rehearing),* 166 US 185, 219; 17 S Ct 604; 41 L Ed 965 (1897), the United States Supreme Court stated:

> Now, whenever separate articles of tangible property are joined together, not simply by a unity of ownership, but in a unity of use, there is not infrequently developed a property, *intangible* though it may be, which in value exceeds the aggregate of the value of the separate pieces of tangible property. Upon what theory of substantial right can it be adjudged that the value of this *intangible* property must be excluded from the tax lists, and the only property placed thereon be the separate pieces of tangible property? [Emphasis added.]

Intangible assets are included in the valuation on the basis of the theory that a total operating system is integrated through a "unity of use." See Amdur, *Property taxation of regulated industries,* 40 Tax Lawyer 339, 347 (1987). See also *Pullman Co v Richardson,* 261 US 330; 43 S Ct 366; 67 L Ed 682 (1923); *Detroit Citizen's Street-Railway v Detroit Common Council, supra; ITT World Communication v San Francisco,* 37 Cal 3d 859; 693 P2d 811 (1985); *Michigan Wisconsin Pipe Line Co v Iowa State Bd of Tax Review,* 368 NW2d 187 (Iowa, 1985).

Valuing the company's property as an integrated system (i.e., "unity of use") requires including intangible elements that affect the property's

[14] In *Consumers Power Co v Port Sheldon Twp,* 91 Mich App 180; 283 NW2d 680 (1979), the Court of Appeals noted that in Michigan, the unit method is used to value properties that, by statute, require central assessment, such as telephone, telegraph, and rail companies.

value. As one respected authority on Michigan law has explained:

> The value of the tangible property of a telephone company is not, alone, a proper valuation, nor is the cost price of a telegraph company, with deductions for deterioration. A requirement that telegraph lines shall be assessed at their cash value means valuation as a whole, plus the intangible value as a system. [2 Cooley, Taxation (4th ed), § 965, pp 1945-1946. Citations omitted.]

See also *Soo Line R Co v Michigan* (Docket Nos. 2068, 2069, December 5, 1977), wherein the Tax Tribunal opined:

> The unitary valuation approach allows a determination of the true cash value of a particular segment of an interstate business by valuation of the entire system with subsequent value allocation to the taxing jurisdiction by a percentage factor representative of the value of the portion of the total system attributable to the taxing jurisdiction. [*Id.,* pp 2-3.]

It is noteworthy that use of the unit concept in valuing utility property does not always or necessarily result in an increase in the assessment. The effect of appraising the property as a unit—including intangibles—can either enhance or diminish the value of the tangible property.[15]

In assessing the operating real and personal property of petitioner located in Michigan,[16] as required by Act 282, the Tax Tribunal employed the unit method of valuation and determined that

---

[15] See Bertane, *The assessment of public utility property in California,* 20 UCLA L R 419 (1973).

[16] Because all the operating property of MBTC was located in Michigan during the tax years in question, this case involved no issue of apportionment of value between states.

"intangibles were properly included as adding value to that property." *Id.,* p 13. We conclude that in doing so the tribunal did not err.

IV

Next, we turn to petitioner's contention that the state is precluded by the intangibles tax act, 1939 PA 301, MCL 205.131 *et seq.;* MSA 7.556(1) *et seq.,* from including intangibles in the valuation of its property under Act 282.

Petitioner points to § 3(b)(10) of the intangibles tax act, which expressly exempts from taxation under that act the intangible personal property of telephone companies and other businesses "paying the tax assessed and levied under Act No. 282 . . . ." Petitioner then calls attention to § 2(e) of the intangibles tax act, which in pertinent part provides:

> Intangible personal property subject to tax under this act *or expressly exempt from the tax hereunder* shall be exempt from all *general* property taxes under the laws of this state. [Emphasis added.]

Upon the basis of the wording of §§ 2(e) and 3(b)(10) of the intangibles tax act, petitioner advances the circular reasoning that because it is "paying the tax assessed and levied under Act No. 282," its intangible personal property is exempt from taxation under § 3(b)(10) of the intangibles tax act, and because it is "expressly exempt," the same intangible property is also rendered exempt by § 2(e) from taxation under Act 282.

We reject this reasoning for two reasons. First, we believe it is clear that the Legislature provided the § 3(b)(10) exemption for telephone and other

public service companies precisely because their intangible property is subject to taxation under Act 282. The obvious and reasonable purpose was to avoid double taxation of such assets.

Second, the petitioner's position has no validity unless the Act 282 tax is a "general" property tax. We are persuaded by respondents' argument that the tax assessed under Act 282, unlike the General Property Tax Act, is more appropriately characterized as a selective tax imposed upon a relatively small number of companies whose property is centrally assessed, and whose businesses are public service in nature. Having in mind that the Legislature referred specifically to Act 282 when it granted the exemption in § 3(b)(10) of the intangibles tax act, we are not convinced that it intended, through the use of general terms in another section of the same act, to turn around and exempt the same intangibles of the same public service companies from any and all taxation under Act 282.

We conclude that the intangibles tax act does not preclude consideration of intangibles in valuing and assessing property for purposes of taxation under Act 282.

V

Finally, we consider petitioner's contention that in light of Const 1963, art 9, § 5, taxation of its intangible personal property is unconstitutional.

This provision of the constitution specifically refers to those public service businesses that were taxed under Act 282 before the current constitution became effective. It directs the Legislature to

> provide for the assessment by the state of the *property* of those public service businesses assessed

by the state at the date this constitution becomes effective, and of other property as designated by the legislature, and for the imposition and collection of taxes thereon. [Emphasis added.][17]

It will be noted that this language recognizes no distinction between tangible and intangible property. Further, a convention comment that accompanied § 5 suggests that the word "property" was chosen for reasons rooted in the history of earlier constitutions of this state. The comment states:

This is a new section directing the legislature to continue the present system of state assessment and collection of property taxes on the properties of certain utilities (notably telephone companies and railroads) . . . .

In the light of these guideposts, it is instructive to examine and compare pertinent language in § 3 of the same art 9 of the current constitution. It relates to the subject of general ad valorem taxation of property:

The legislature shall provide for the uniform general ad valorem taxation of real and *tangible*

---

17 Following is the full text of Const 1963, art 9, § 5:

The legislature shall provide for the assessment by the state of the property of those public service businesses assessed by the state at the date this constitution becomes effective, and of other property as designated by the legislature, and for the imposition and collection of taxes thereon. Property assessed by the state shall be assessed at the same proportion of its true cash value as the legislature shall specify for property subject to general ad valorem taxation. The rate of taxation on such property shall be the average rate levied upon other property in this state under the general ad valorem tax law, or, if the legislature provides, the rate of tax applicable to the property of each business enterprise assessed by the state shall be the average rate of ad valorem taxation levied upon other property in all counties in which any of such property is situated.

personal property not exempt by law. [Emphasis added.][18]

Clearly, § 3 *does* distinguish between tangible and intangible property, and it limits the application of the general ad valorem property tax to real and *tangible* personal property. We are urged by petitioner to construe the meaning of "property" in § 5 by reading it as though it were modified by the word "tangible," as in § 3. We reject this suggestion.

When construing a constitution, words are to be given their natural and ordinary meaning. *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983). "The object of construction, as applied to a written constitution, is to give effect to the intent of the people adopting it." 1 Cooley, Constitutional Limitations (8th ed), p 124. "Often, however, '[w]e cannot understand these provisions unless we understand their history . . . .'" *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 253; 507 NW2d 422 (1993) (RILEY, J., dissenting), quoting Cooley, *supra,* p 132.

A review of some of the history of the 1850 and 1908 Constitutions throws light on the meaning of words now at issue. In 1900, Governor Pingree

---

[18] Following is the full text of Const 1963, art 9, § 3:

The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates.

proposed and successfully pushed to ratification an amendment to the 1850 Constitution. Appearing before a joint session of the houses of the Legislature, he explained the need for such an amendment:

> Under our Constitution, as construed by the Supreme Court of Michigan, it is practically impossible to frame a law by which property of railroad, telegraph, telephone and express companies can be taxed upon its true value . . . . [Journal of the House, October 10, 1900, p 10.]

He continued at length, arguing the advantages of taxing the property of these companies, rather than their earnings. He contended that such a change in the method of taxing such companies would greatly benefit the school system.

Pointing to railroads as an example, Governor Pingree asserted, "Without franchises to operate their roads in Michigan, they would not enjoy the profits from 'through traffic.'" *Id.,* p 12. Acknowledging concern expressed that "no valuation has been made of railroad, telegraph, telephone and express companies' property," he explained that it would be the duty of the Board of State Tax Commissioners to "ascertain the valuation of the property of [these] corporations . . . ." *Id.,* p 13.

Leaving no doubt that his concept of property included intangibles, the Governor noted that the board had employed Prof. Henry C. Adams of the University of Michigan

> to investigate the subject of franchise values, and to determine the value of immaterial or intangible property, including the franchises, of these corporations. The addition of the value of the tangible property to the value of the intangible property, including franchises, will give the total valuation

according to one method of appraising the property. [*Id.,* p 13.]

He concluded this portion of his address to the Legislature as follows:

Many of the statements herein made with reference to railroad, apply with equal force to telegraph, telephone and express companies, which pay taxes upon their earnings. In the case of the latter corporations, it will be found that the properties of greatest value which they possess are their franchises. [*Id.,* p 15.]

Although, as adopted, the amendment of the 1850 Constitution (art 14, § 10) mentioned only corporations to be designated by the Legislature,[19] it laid the foundation for the fundamental change in Michigan taxation of public service businesses, such as railroads, telegraph and telephone companies, which occurred with enactment in 1905 of Act 282. Later, when the 1908 Constitution was ratified, art 10, § 5 specifically referred to public service companies, including those that transmitted "messages by telephone or telegraph."[20]

---

[19] Const 1850, art 14, § 10 provided:

The state may continue to collect all specific taxes accruing to the treasury under existing laws. The legislature may provide for the collection of specific taxes from corporations. The legislature may provide for the assessment of the property of corporations, at its true cash value by a state board of assessors and for the levying and collection of taxes thereon.

[20] Const 1908, art 10, § 5 provided:

The legislature may provide by law for the assessment at its true cash value by a state board of assessors, of which the governor shall be ex-officio a member, of the property of corporations and the property, by whomsoever owned, operated or conducted, engaged in the business of transporting passengers and freight . . . transmitting messages by telephone or telegraph . . . and for the levy and collection of taxes thereon.

In light of this background, we find it particularly significant that neither the 1850 nor the 1908 Constitutions reflected any intention to distinguish between tangible and intangible property. Indeed, history strongly suggests that the word "property" was understood to include intangible, as well as tangible property.

Not until 1939, when the intangibles tax act was enacted, did intangibles become exempt from taxation under the General Property Tax Act and subject to separate taxation.[21] Thus, when the 1963 Constitution was drafted and ratified, art 9, § 3 relating to the general ad valorem property tax, recognized in the constitution for the first time a distinction between tangible and intangible property. Application of the general property tax was limited to "real and *tangible* personal property."

However, similar language was not used by the drafters of Const 1963, art 9, § 5, which refers to Act 282 taxation. Because intangibles of the affected public service companies are not, and never have been, exempt from Act 282 taxation, art 9, § 5 of the current constitution, like its counterpart in the 1908 Constitution, provides for "assessment by the state of the *property*" of certain public service companies.

Obviously, if they had so intended, the framers of the 1963 Constitution could have altered the treatment historically accorded public service companies taxed under Act 282. They could have done so by inserting the modifier "intangible" in art 9, § 5, just as they did in art 9, § 3. That they chose not to do so persuades us that Const 1963, art 9, § 5 is not a bar to the inclusion of intangibles in the assessment of property under Act 282.[22]

---

[21] MCL 205.132(e); MSA 7.556(2)(e).

[22] Petitioner sought in this appeal to argue also that Act 282

VI

For the reasons set forth, we affirm the decisions of the Michigan Tax Tribunal and the Court of Appeals.

CAVANAGH, C.J., and LEVIN, BRICKLEY, BOYLE, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

violates equal protection guarantees in the federal and state constitutions. However, because this issue clearly falls outside the limits of our order granting leave to appeal, we do not address it.