UNITED PARCEL SERVICE OF AMERICA, INC.; United Parcel Service, Inc.; and United Parcel Service Co., Petitioners–Appellees,

v.

Mary HUDDLESTON, Property Tax Administrator, State of Colorado, Respondent–Appellant,

and

Colorado State Board of Assessment Appeals, Appellee.

No. 98CA0286.

Colorado Court of Appeals, Div. V.

April 29, 1999.

As Modified on Denial of Rehearing June 17, 1999.

** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1998.

Holme Roberts & Owen LLP, Stephanie M. Tuthill, David B. Wilson, Michelle M. Rose–Hughes, Denver, Colorado, for Petitioners–Appellees.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Larry A. Williams, First Assistant Attorney General, Denver, Colorado, for Respondent–Appellant.

No Appearance for Appellee.

Opinion by Judge DAVIDSON.

Respondent, the Property Tax Administrator (PTA), appeals from a final order of the Board of Assessment Appeals (BAA) determining that the PTA exceeded her authority in valuing the property of petitioners, United Parcel Service of America, Inc. (UPS America), United Parcel Service, Inc., and United Parcel Service Company (UPS Co.) under § 39–4–101, et seq., C.R.S.1998. We reverse in part and remand for further proceedings.

Prior to tax year 1995, the PTA had valued UPS Co. as an airline company and a public utility under § 39–4–102, C.R.S.1998, and determined such value based only on UPS Co.'s operating property and plant. However, for tax year 1995, the PTA, after determining that UPS Co., as a wholly-owned subsidiary of UPS America, was a highly integrated part of a unitary package delivery business, declared her intent to value UPS Co. so as to include the total value of UPS America and all its subsidiaries.

On August 1, 1995, the PTA issued a final notice of valuation which placed a value on UPS Co. based on her valuation of UPS America and all its subsidiaries. A second notice of valuation was issued approximately two weeks later reflecting an amended value.

UPS Co. petitioned the BAA to review the valuation decision, arguing that the PTA had exceeded her jurisdiction by centrally assessing UPS America and its subsidiaries because they are not public utilities and that the valuations in the notices were wrong.

The PTA asserted that, because UPS Co. is a wholly-owned subsidiary of UPS America and a fully integrated part of a unitary business, she was authorized to value the operating property and plant of UPS Co. as a unit under § 39–4–102(1), C.R.S.1998, and that such unit was comprised of UPS America and its subsidiaries.

After receiving stipulated facts and hearing argument from both parties, the BAA entered its order determining that the PTA, under § 39–4–102(1), was authorized to value and assess as a unit only the operating property and plant of UPS Co.

Although the issues before the BAA were the PTA's scope of authority under § 39–4–102(1) to value UPS Co. as a unit and the actual valuation, the BAA certified as final its decision concerning the PTA's authority. Neither party challenges the finality of the order. Moreover, the pleadings and proceedings show that the parties treated this action as one for declaratory judgment to determine the rights of the PTA to assess UPS Co. under § 39–4–102(1), and therefore, so do we. *See Atchison v. City of Englewood,* 180 Colo. 407, 506 P.2d 140 (1973)

(declaratory judgment is conclusive as to questions raised by parties).

## I.

The sole issue on appeal is whether the PTA, in determining the value of the public utility UPS Co. as a unit, has the authority under § 39–4–102(1) to value as a unit the operating properties and plant of UPS America and all of its wholly-owned subsidiaries. The PTA contends that UPS Co.'s airline service is a part of the larger function of package delivery in which UPS America and its subsidiaries, including UPS Co., are engaged. Therefore, she argues, the value of UPS Co. as a unit should be determined by the value of UPS America and all its subsidiaries. The UPS companies contend, to the contrary, that the plain language of the statute limits the PTA's valuation and assessment of UPS Co. as a unit to the operating property and plant of UPS Co. alone because it, as the airline company, is the public utility. We agree with the BAA and the UPS companies that §39-4-102 requires the PTA to determine the value of UPS Co. in its capacity as a public utility. We further agree that the PTA is not authorized to assess the total value of UPS America and its subsidiaries in determining UPS Co.'s value.

However, inasmuch as we read the BAA's order as limiting the PTA's authority under §39-4-102(1) to determine the value of UPS Co. by evaluating only its operating plant and property without considering the direct contribution of UPS America and its other subsidiaries to UPS Co.'s operation as an airline company, we reverse that part of the order.

## A.

Under § 39–4–102(1), the property tax administrator is to determine the "actual value of the operating property and plant of each public utility as a unit."

Included in the listing of those entities considered public utilities under § 39–4–101(3), C.R.S.1998, is:

> every sole proprietorship, firm, limited liability company, partnership, association, company, or corporation, and the trustees

or receivers thereof, whether elected or appointed, which does business in this state as a[n] ... airline company.

An airline company is defined under § 39-4-101(2), C.R.S.1998, as:

any operator who engages in the carriage by aircraft of persons or property as a common carrier for compensation or hire, or the carriage of mail, or any aircraft operator who operates regularly between two or more points and publishes a flight schedule. 'Airline company' shall not include operators whose aircraft are all certified for a gross takeoff weight of twelve thousand five hundred pounds or less and who do not engage in scheduled or mail carriage service.

The plain language of the statute requires the property tax administrator to determine the value of each public utility doing business within this state. Here, it is undisputed that UPS Co. is an airline company that owns and operates personal property located in Colorado and, therefore, could be valued as a public utility. It is the extent of the property to be valued which is at question here.

The PTA argues that the operating property and plant to be valued and assessed as a unit include the value of the parent company if the subsidiary which is the public utility is a fully integrated part of the larger business in which the company is engaged. The UPS companies argue that the unit to be valued under § 39-4-102(1) is comprised only of the property belonging to the company that qualifies as a public utility.

We conclude that the operating property and plant valued as a unit is the public utility's property and plant that is used in carrying on its business. However, contrary to the BAA's determination, such value includes intangible rights derived from other UPS property and plant even if owned by the parent company or other of its subsidiaries if such contribute directly to the operation of UPS Co. as an ongoing concern.

### B.

In reviewing an agency's action, a court must determine all questions of law, interpret the statutory provisions, and apply such interpretation to the facts as found or established. Section 24-4-106(7), C.R.S.1998; *Transponder Corp. of Denver, Inc. v. Property Tax Administrator*, 681 P.2d 499 (Colo. 1984).

■ If, as here, the underlying facts are undisputed, the issue presented is one of law, and we are not bound by the BAA's determination. Thus, interpretation of § 39-4-102(1) in determining the PTA's authority to value UPS Co. as a unit is an issue of law that we review *de novo*. *See Johnson v. Regional Transportation District*, 916 P.2d 619 (Colo.App.1995).

■ When interpreting statutes, full effect must be given to the intent of the General Assembly. *Charnes v. Boom*, 766 P.2d 665 (Colo.1988). To give effect to that intent, we look to the words used, reading them in context and according them their plain and ordinary meaning. *Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo. 1994).

■ Tax statutes are not to be extended beyond the clear import of the language used, nor should their operation be extended by analogy. *Transponder Corp. of Denver, Inc. v. Property Tax Administrator, supra*.

■ A public utility is a "business or service which is engaged in regularly supplying the public with some commodity or service which is of public consequence and need." *Black's Law Dictionary* 1395 (rev. 4th ed.1968); *cf. Ephraim Freightways, Inc. v. Public Utilities Commission*, 151 Colo. 596, 380 P.2d 228 (1963) (common carrier seeking certificate must make showing of public convenience and necessity).

■ Under § 39-4-101(3), an entity listed as one of the businesses that may be defined as a public utility also must be doing business in Colorado in order for its operating property and plant to be valued as such. *See United States Transmission Systems, Inc. v. Board of Assessment Appeals*, 715 P.2d 1249 (Colo.1986) (whether company is a public utility depends on whether it is operating as a public utility within the state as defined under § 39-4-102).

Section 39-4-102 requires that the operating property and plant of a public utility are to be assessed as a unit. Because the service provided may involve ownership or operation of property interests that extend through several taxing districts, a method for fairly determining the value of the property and allocating it to the districts is set forth under § 39-4-102. Centrally assessing the public utility as a unit allows for fair apportionment of the value to each taxing district. *See United States Transmission Systems, Inc. v. Board of Assessment Appeals, supra; American Telephone & Telegraph Co. v. State Department of Assessments & Taxation,* 345 Md. 596, 693 A.2d 815 (1997) (unit method for assessing operating property allows state to apportion the fair share of unit value among the taxing districts); *Michigan Bell Telephone Co. v. Department of Treasury,* 445 Mich. 470, 518 N.W.2d 808 (1994) (valuation and assessment of real and personal property of public utility as a unit reflects its use as a part of a going concern). Therefore, although the PTA may centrally assess UPS Co. as a unit, such unit must also reasonably reflect UPS Co.'s presence and operation as a public utility within this state.

## II.

The PTA contends that the BAA erred in deciding that in determining the value of the public utility, UPS Co., as a unit, she could not include the total value of UPS America and its subsidiaries. We do not agree.

While it is generally recognized that, for tax valuation purposes, the property of a multistate corporation may be assessed by determining the total value of the parent corporation and all of its subsidiaries under the unitary business rule, that general concept set forth in cases such as *Allied–Signal, Inc. v. Director, Division of Taxation,* 504 U.S. 768, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992) and *Exxon Corp. v. Wisconsin Department of Revenue,* 447 U.S. 207, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980), is not applicable when, as here, the statutes define the entity whose property is to be valued. See also *Western Union Telegraph Co. v. Massachusetts,* 125 U.S. 530, 8 S.Ct. 961, 31 L.Ed. 790 (1888) (assessing telegraph company as a

unit for property tax purposes); *United States Transmission Systems, Inc. v. Board of Assessment Appeals, supra* (assessing value of telephone company as a unit).

In those cases, the unitary business rule was applied to allow the state to value, as a whole, the parent corporation and its subsidiaries in determining the total value of the company and then apportioning the fair value of the company existing within the state's borders. The Supreme Court's reasoning was based on the existence of: 1) a substantial nexus between the interstate activities and the taxing state, and 2) a rational relationship between the income attributed to the state and the intrastate values of the entity subject to taxation.

However, unlike here, the business entity subject to taxation was not defined by statute. Here, in contrast, § 39-4-101(3) specifically defines the business entity as a "public utility," and § 39-4-101(2) allows only the operating property and plant of such utility to be valued "as a unit." Therefore, whether a nexus or a rational relationship exists is not the test in determining the property to be valued and assessed under the statute. Instead, under the plain language of the statute, the question is not whether the PTA is valuing and assessing extraterritorial values in the absence of a substantial nexus between the business to be taxed and property outside the state, but whether the PTA properly is valuing and assessing the business entity defined by statute as a public utility.

Here, the PTA described the unit to be assessed as the parcel delivery business. However, a parcel delivery business is not categorized as a public utility under § 39-4-102(1). Rather, the unit that is to be valued and assessed as a public utility under the statute is an airline company, here UPS Co. Because the unit to be assessed has been defined as an airline company, that property used by UPS Co. to conduct such business is the property that is to be valued and assessed under § 39-4-102(1).

Therefore, because UPS Co.'s operating property and plant to be assessed as a unit is

that property which is used to carry on its business as an airline company, the BAA properly determined that the PTA could not simply assess the total value of UPS America and its subsidiaries in determining the value of UPS Co. Because the PTA erred in defining too broadly the unit to be assessed contrary to the requirements of § 39–4–102, she improperly expanded the definition of public utility and exceeded her authority under the statute.

## III.

The PTA argues, nevertheless, that the stipulated facts demonstrate that UPS Co. receives benefits from UPS America and its subsidiaries and that, therefore, such benefits justify including the total value of UPS America in determining the value of UPS Co. as a unit. Although we agree with the BAA that the PTA must value as a unit only the operating property and plant of UPS Co., we disagree with the BAA's determination that the PTA may not consider at all any of the property of UPS America and its subsidiaries in determining such value.

The BAA, in making its determination that only the operating property and plant of UPS Co. could be taxed, found that UPS Co. was the only subsidiary of UPS America operating as an airline company and the only subsidiary doing business in this state as a public utility that also owned or operated property within the state.

These findings had support in the stipulated facts submitted by the parties that UPS Co. was not the only air transport company used by UPS America to deliver its packages, that UPS CO. contracted with other unrelated companies for its services, that UPS Co. employees had different uniforms and duties than the employees of other subsidiaries and did not work for those subsidiaries, and that UPS Co., as an airline, had duties and responsibilities different from the other companies owned by UPS America. Further evidence supported the BAA's finding that UPS Co. operated separately from the other subsidiaries. UPS Co. maintains its own legal, purchasing, accounting, and payroll departments, and it prepares its own financial statements.

However, the stipulated facts also showed that UPS Co. has received money from UPS America to purchase aircraft. This money, in the form of a loan upon which UPS Co. has paid only interest, was to further the operations of UPS Co. and not those of the other subsidiaries or UPS America. Additionally, UPS Co. receives funds from UPS America for certain business operations. Indeed, the PTA asserts that one subsidiary, UPS Worldwide Forwarding, Inc., arranges for the air transportation of packages by UPS Co. and other non-UPS airlines, receives the revenue from such services, and commingles those funds with funds of other subsidiaries. In light of these facts and assertions, we cannot say that the value of UPS Co. does not also include some value that may be attributed to the contributions of UPS America and certain of its subsidiaries.

■ Thus, in valuing the operating property and plant of UPS Co. as a unit, the PTA may include not only that property which UPS Co. owns or operates in carrying out its business as an airline company, but also such other property which contributes directly to the operation of UPS Co. See §39-4-102(1)(a)-(d), C.R.S. 1998 (value includes tangible and intangible property which is directly connected with business in which the public utility is engaged). *See United States Transmission Systems, Inc. v. Board of Assessment Appeals, supra* (determining property value of public utility includes intangible rights which contribute to operation of business); *American Telephone & Telegraph Co. v. State Department of Assessments & Taxation, supra* (valuing operating property as a unit includes property used to operate the public entity); *Michigan Bell Telephone Co. v. Department of Treasury, supra* (usual and customary meaning of property includes intangibles for purposes of valuation).

To the extent that the order of the BAA limited the PTA to determine the value of UPS Co. by evaluating only its operating property and plant and precluded the PTA

from determining the direct contribution of other property owned by UPS America to the operation of UPS Co.'s airline business, the order is reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Judge BRIGGS and Judge VOGT concur.