Opinion by
Judge TAUBMAN.
In this action for judicial review of an administrative ageney action, petitioner, Colorado Interstate Gas Company (CIG), appeals the decision of the Board of Assessment Appeals (BAA) upholding the valuation of its property by respondent, the state property tax administrator (PTA). We affirm.
This action arises out of a tax valuation of CIG's public utility property in Colorado. In making a tax valuation, the PTA is required to value as a unit all CIG's property located both inside and outside Colorado. After valuing the entire property, the PTA must allocate to Colorado the proportion of the actual value that in her judgment accurately represents the value of the property within Colorado. Section 39-4-106, C.R.S., 1999.
Here, the PTA valued CIG's property as a unit at approximately $450 million. CIG appealed that decision to the BAA, arguing that $450 million was an over-valuation and that thus, the portion of CIG's property located in Colorado was also overvalued.
The parties agreed that, on appeal to the BAA, the only issue for consideration would be whether, under the income approach to appraisal, financing or "flotation" costs must be included in the calculation of CIG's costs of capital. Such costs include transaction fees such as underwriting costs, attorney fees, advisory fees, and printing and registration of securities fees that are incurred by a buyer when purchasing property through debt or equity financing.
It is undisputed that the income approach as applied here is determined by dividing the projected net cash flow a prudent buyer could expect to receive from the property by the buyer's cost of capital used to finance the purchase.
The BAA concluded that the PTA had properly excluded the financing costs because such costs are hypothetical. That conclusion is the focus of CIC's appeal.
I.
Initially, we note that CIG has not named the BAA as a party to this appeal as required by § 24-4-106(11)(d), C.R.§8.1999.
Ordinarily, a case will be dismissed if the BAA has not been named a party. See Capital Associates International, Inc. v. Arapahoe County Board of Commissioners, 802 P.2d 1180 (Colo.App.1990)(the BAA must be made a party to appeals for judicial review of its decisions). However, here, the BAA entered its appearance, filed a notice of non-participation, and has been served with *960 the briefs and other papers filed. Consequently, because the effect of the above is the same as if the BAA had been named as a party, we will consider the BAA as a party to this appeal and address the appeal on the merits.
IL.
CIG contends the BAA erred as a matter of law in concluding that the PTA was not required to include financing costs in the calculation of CIG's costs of capital. We disagree.
At the outset, we note that in their briefs the parties refer to the PTA and the BAA interchangeably. Nevertheless, because this appeal challenges the order of the BAA, we focus our analysis on its conclusions.
The appropriate procedures for taxation and valuation of public utility property are dictated by a statute separate from that covering other types of property. See § 39-1-103(8) and § 389-4-101, et seq., C.R.S8.1999. According to § 89-4-102(1), C.R.8.1999;:
The [property tax] administrator shall determine the actual value of the operating property and plant of each public utility as a unit, giving consideration to the following factors and assigning such weight to each of such factors as in his judgment will secure a just value of such public utility as a unit:
(a) The tangible property comprising its plant whether the same is situated within this state ...
(b) Its intangibles, such as special privileges, franchises, contract rights and obligations, and rights-of-way ...
(c) Its gross and net operating revenues during a period of time not to exceed the most recent five year period, capitalized at indicative rates;
(d) The average market value of outstanding securities during the preceding calendar year, if such market value is determinable.
The Assessors Admimistrative and Assessment Procedures Manual outlines the appraisal approaches the PTA follows in making a valuation of public utility property pursuant to § 89-4-102. First, the PTA considers the historical cost of all the property, both tangible and intangible, that comprises the operating property of the public utility. Second, the PTA capitalizes the utility's income. Third, the PTA considers the average market value of the company's outstanding securities during the preceding calendar year if such market value can be determined. According to the manual, this third approach is a variation of the market approach to appraisal and is used because of the infrequent sales of public utility property. 2 Assessors Reference Iibrary § XI at 11.8 (revised 9-99).
After making the value determination, the PTA must allocate for Colorado tax purposes that portion of the actual value that accurately represents the value of the property within Colorado. Section 39-4-106(2)(b), C.R.S. 1999.
 -An ultimate fact involves a question of law or a mixed question of law and fact that settles the rights and liabilities of the parties. Samaritan Institute v. Prince-Walker, 883 P.2d 3 (Colo.1994). Ultimate facts ordinarily are phrased in the language of the controlling statute or legal standard. State Board of Medical Examiners v. McCroskey, 880 P.2d 1188 (Colo.1994).
An ultimate finding of fact will be sustained if it has a reasonable basis in law. Board of Assessment Appeals v. AM/FM International, 940 P.2d 338 (Colo.1997).
When interpreting statutes, a reviewing court must give full effect to the intent of the General Assembly. Thus, the court must look to the words used in context and according to their plain and ordinary meaning. United Parcel Service of America, Inc. v. Huddleston, 981 P.2d 228 (Colo.App.1999).
A court may not extend the meaning of tax statutes beyond the clear import of the language used, and the court should not extend the operation of the statutes by analogy. United Parcel Service of America, Inc. v. Huddleston, supra.
A reviewing court may not substitute its judgment for that of the trier of fact, and may not set aside a decision of the BAA unless it is lacking in evidentiary support. Board of Assessment Appeals v. Colorado Arlberg Club, 762 P.2d 146 (Colo.1988).
*961 The credibility of witnesses, weight to be given witness testimony, and the sufficiency of the evidence presented are all matters within the fact-finding province of the BAA, and its ruling thereon will not be disturbed on appeal absent an abuse of discretion. Weingarten v. Board of Assessment Appeals, 876 P.2d 118 (Colo.App.1994).
There does not exist any Colorado appellate holding that addresses whether the PTA is required to include financing costs as part of the calculation of the costs of capital.
This issue presents a mixed question of law and fact, and the BAA's determination here was based on an ultimate finding of fact.
CIG argues that, as a matter of law, and based on "generally accepted appraisal standards," the BAA should have concluded that the PTA was required to consider financing costs in calculating CIG's costs of capital. CIG urges that the valuation of its property was inaccurate because, in excluding the financing costs, its determination of the costs of capital was too low, leading to a higher property value.
CIG argues in the alternative that, even if we find that as a matter of law the statute does not require the consideration of finane-ing costs, substantial evidence does not support the BAA's determination.
To support its contention that a valuation of its property must include financing costs, CIG, throughout its briefs, refers to "generally accepted appraisal standards," without citing any authority which defines these standards. This phrase is used in tax statutes of other states. See Fla. Stat. ch. 195.096 (1999); Kan. Stat. Ann. §$ 79-505 (1999); Tex. Tax Code Ann. § 5.102 (1999); Wyo. Stat. § However, it is not used in any of the relevant Colorado statutory, regulatory, constitutional, or case law authority. See Colo. Const. art. X, § 3(1)(a); § 89-4-101, et seq., C.R.8.1999. Therefore, we decline to rely on a standard of appraisal not applicable in Colorado.
In addition, CIG does not cite case law or statutory authority that supports its argument, but hinges its argument on a definition of actual value to which the parties stipulated at the BAA hearing. In this appeal, the parties refer to actual value and market value interchangeably. At the BAA hearing, the parties stipulated that market value and, by analogy, "actual value" are defined, as set out in 11 The Appraisal Institute, Appraisal of Real Estate 22 (1996):
The most probable price, as of a specific date, in cash, or in terms equivalent to cash, or in other precisely revealed terms for which the specified property rights should sell after reasonable exposure in a competitive market under all conditions requisite to a fair sale, with the buyer and seller each acting prudently, knowledgeably, and for self interest, and assuming that neither is under undue duress.
Relying on this definition, CIG contends that the valuation of its property must include financing costs associated with the sale of property.
The above stipulated definition of market value has been cited only onee by Colorado's appellate courts in the context of valuation and tax assessment. See Board of Assessment Appeals v. Colorado Arlberg Club, supra. However, Arlberg involved the valuation and tax assessment of real property owned by a non-profit corporation; it was not a public utilities case. We are not aware of any case involving tax assessment and valuation of public utilities that defines market value in the terms stipulated by the parties.
In addition, contrary to CIG's assertions, Colorado courts have not determined that actual value is synonymous with market value. See May Stores Shopping Centers, Inc. v. Shoemaker, 151 Colo. 100, 376 P.2d 679 (1962) (in determining "true value," "market value" shall be the guide); Fellows v. Grand Junction Sugar Co., 78 Colo. 393, 242 P. 635 (1925) ("market value" is a guide in determining "actual value").
The plain language of § 89-4-102 leads us to conclude that the General Assembly did not intend to equate "actual value" with "market value." The General Assembly's intent is apparent from its use of the term "actual value" when referring to the overall property value, and use of "market value" to refer only to the value of a public utility's outstanding securities during the calendar year preceding the valuation. See § 39-4-102(1), C.R.8.1999.
Accordingly, we conclude that "actual value" is not the same as market value and, *962 therefore, decline to use the terms interchangeably or to define "actual value" using the definition of market value to which the parties stipulated. See Ackerman v. Foster, 974 P.2d 1 (Colo.App.1998) (parties may not stipulate as to content of the law governing their action).
A.
Based on our review of the statutory language and the Assessors Administrative and Assessment Procedures Manual, we conclude that the BAA was correct in ruling that the PTA was not required, as a matter of law, to consider financing costs in the valuation of CIG's property, and therefore, the method by which she arrived at her valuation was authorized under § 39-4-102, C.R.S. 1999. See Salt River Project Agricultural Improvement & Power District v. Board of Assessment Appeals, 719 P.2d 368 (Colo.App.1986) (although the taxpayer asserted a different method of assessment should have been employed by the administrator, the method used by the PTA was authorized by § 39-4-102).
B.
We also disagree with CIG's assertion that the BAA's conclusion was not supported by substantial evidence.
At the BAA hearing, CIG and the PTA presented conflicting testimony as to whether financing costs should be included in determining the costs of capital. CIs experts testified that such costs were a necessary part of the calculation. Conversely, the PTA's expert testified that such costs were appropriately excluded because they are hypothetical costs that would be incurred only by a third party purchaser of CIG's property or by CIG if it acquired another company or property.
Although the evidence presented was conflicting, and CIG presented a significant amount of evidence to support its position, ultimately the determination of the eredibility of witnesses and the weight given to their testimony, as well as the sufficiency of the evidence presented, were all matters within the fact-finding province of the BAA; the volume of evidence is not controlling.
The record contains evidentiary support for the BAA's decision, and thus, it did not abuse its discretion in concluding that finane-ing costs are hypothetical costs which the PTA is not required to consider as part of its tax valuation determination.
IIL
CIG next contends the BAA improperly concluded the PTA was not required to consider financing costs in calculating the costs of capital because market value is defined as "cash or its equivalent," and most buyers of its property would pay cash and would therefore not incur financing costs. We disagree with CIG's characterization of the BAA's order and, therefore, reject its argument.
CIG argues that application of the phrase "cash or its equivalent" required the BAA to consider financing costs. However, CIG's argument is predicated on a misreading of the BAA's order.
In its order, the BAA acknowledged that non-cash purchasers of CIG's property would incur financing costs, and it recognized that the parties had stipulated that market value means the price paid "in terms of cash or its equivalent." However, after quoting this definition and without further discussion of it, the BAA concluded that financing costs "are not an acceptable factor in the ad valo-rem valuation of the centrally assessed subject." It explained that when the PTA caleu-lates the actual value of a public utility's property for tax purposes, § 39-4-102 does not require consideration of whether a prospective purchaser would incur financing costs.
Contrary to CIG's statement, the BAA did not conclude that most buyers would pay in cash; rather, it concluded that financing costs were future events that the PTA was not required to consider under § 39-4-102.
Thus, we decline to address CIG's argument further.
Order affirmed.
Judge PLANK and Judge NIETO concur.