KOK v CASCADE CHARTER TOWNSHIP

Docket No. 233478. Submitted January 9, 2003, at Lansing. Decided February 28, 2003, at 9:15 A.M.

Evonne A. Kok filed a petition in the Michigan Tax Tribunal challenging Cascade Charter Township's property tax assessment for the year 2000 on the basis that the assessment violated Const 1963, art 9, § 3, as amended by Proposal A, and MCL 211.27a(2)(a). The residential property had been assessed as partially complete new construction and given a taxable value for the 1999 tax year. The property was completed and then reassessed as complete new construction for the 2000 tax year. The tribunal concluded that the township properly calculated the taxable value of the property when the township treated as new construction the difference between the value of the residence as completed in 1999 and the value of the partially completed residence in 1998. The tribunal also denied the petitioner's request to supplement the record after the hearing. The petitioner appealed.

The Court of Appeals *held*:

1. Under Const 1963, art 9, § 3, as amended by Proposal A, and MCL 211.27a(2)(a), property is to be assessed at not more than fifty percent of its true cash value. For taxes levied in and after 1995, the taxable value, in the absence of a transfer of ownership of the parcel of property, is the lesser of the property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. Nothing in the language of MCL 211.27a(2)(a) provides an exception to this formula for new construction that is partially completed and has a taxable value assessed in one tax year, and is fully completed in a subsequent tax year. Furthermore, nothing in the language of MCL 211.34d(1)(b) regarding additions, supported the tribunal's finding that the taxable value of an addition, including new construction, can be determined by treating as new construction the difference between the value of the residence as completed and the value of a partially completed residence. Thus, the township was precluded from reappraising the entire property for the 2000 tax year as new construction without regard to the taxable value of the partially

completed construction assessed in the 1999 tax year. This part of the decision of the tribunal must be reversed.

2. The tribunal did not abuse its discretion in denying the petitioner's request to supplement the record under 1999 AC, R 205.1342, because the evidence was untimely submitted and the township did not have an opportunity to evaluate the evidence before the hearing. This part of the decision of the tribunal must be affirmed.

Affirmed in part, reversed in part, and remanded.

*Miller, Johnson, Snell & Cummiskey, P.L.C.* (by *Peter J. Kok*), for the petitioner.

*Law, Weathers & Richardson, P.C.* (by *Ingrid A. Jensen*), for the respondent.

Before: MURRAY, P.J., and SAWYER and FITZGERALD, JJ.

PER CURIAM. Petitioner Evonne A. Kok appeals as of right the decision of the Michigan Tax Tribunal affirming respondent Cascade Charter Township's calculation of the taxable value of petitioner's real property for the 2000 tax year. We affirm in part, reverse in part, and remand for further proceedings.

BASIC FACTS AND PROCEDURAL HISTORY

The property in question is a one-story family residence with 2,878 square feet of living area, a finished walkout basement with 2,281 square feet of living area, a garage, a covered porch, and a deck. The residence is located on 1.04 acres along the Thornapple River in Kent County. The real property was purchased in December 1996, and construction on the house began in 1998. Respondent assessed the entire property, both house and land, for the 1999 tax year at a fair market value (FMV) of $409,400, with a taxable value of $204,700. At the time the property was

appraised for the 1999 tax year, the house was under construction. The $409,400 valuation took into account the fact that the house was only fifty-six percent complete at the time of the valuation. The house was fully completed on April 1, 1999. Thereafter, respondent assessed the property "as complete new construction" for the 2000 tax year, giving it an FMV of $769,400, with a taxable value of $384,700.

On June 21, 2000, petitioner filed a petition in the small-claims division of the Tax Tribunal challenging the assessed taxable value of $384,700. The petition was based on Const 1963, art 9, § 3, as amended by Proposal A, and MCL 211.27a(2)(a), which petitioner contends limit the assessment of the taxable value of the property to "the property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions, which includes new construction." Applying this formula, petitioner calculated a maximum taxable value of $305,858, with an FMV of $611,716.[1]

Respondent agreed with petitioner's interpretation of MCL 211.27a(2)(a) as applied to existing homes. Respondent asserted, however, that petitioner's interpretation of the law does not apply to a determination of taxable value with regard to new construction. Respondent noted that a building permit was issued on May 12, 1998, and following a December 15, 1998, inspection of the property by respondent's residential appraiser, a determination was made that the construction was fifty-six percent completed for the 1999 tax year. After the house was completed, respondent

---

[1] Petitioner calculated this number by taking the December 31, 1998, FMV of $409,400, adding an inflationary factor number of $7,778, and adding the cost of the "additions" in the amount of $194,538.

did a "complete new construction final" on April 28, 1999. "This included an interior inspection of the home and measuring the entire outside of the structure to verify the measurements from the blueprints." From this information, the FMV of $769,400 and the assessed taxable value of $384,700 for the 2000 tax year were generated.

A hearing was held regarding the petition on October 12, 2000. In pertinent part, the tribunal found that respondent properly calculated the taxable value for the 2000 tax year. The tribunal concluded, "Respondent has simply treated as new construction the difference between the value of the house as completed at December 31, 1999, and the value of the partially completed house at December 31, 1998." Petitioner's request for a rehearing was denied by the tribunal.

I

The primary issue before this Court is whether, under Const 1963, art 9, § 3, as amended by Proposal A, and MCL 211.27a(2)(a), respondent was precluded from reappraising the entire property for the 2000 tax year as new construction without regard to the taxable value of the partially completed construction assessed in the 1999 tax year.

Const 1963, art 9, § 3, as amended by Proposal A, provides:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50

percent; and for a system of equalization of assessments. *For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred.* When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value. The legislature may provide for alternative means of taxation of designated real and tangible personal property in lieu of general ad valorem taxation. Every tax other than the general ad valorem property tax shall be uniform upon the class or classes on which it operates. A law that increases the statutory limits in effect as of February 1, 1994 on the maximum amount of ad valorem property taxes that may be levied for school district operating purposes requires the approval of ¾ of the members elected to and serving in the Senate and in the House of Representatives. [Emphasis added.]

The emphasized language was part of the language added to this constitutional provision by the Michigan electorate in ratifying Proposal A. *WPW Acquisition Co v Troy*, 466 Mich 117, 121; 643 NW2d 564 (2002). "As is plain, this language operates to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the 'taxable value' of the property may increase each year, even if the 'true cash value,' that is, the actual market value, of the property rises at a greater rate." *Id.* at 121-122. The Court noted, however, that this blanket bar was tempered by allowing for adjustments for additions. *Id.* at 124.

After the electorate accepted Proposal A, the Legislature enacted 1994 PA 415 to revise relevant portions of the General Property Tax Act (GPTA), MCL 211.1

*et seq.*, effective December 29, 1994. *WPW Acquisitions Co v Troy*, 250 Mich App 287, 298; 646 NW2d 487 (2002). MCL 211.27a provides, in relevant part:

(1) Except as otherwise provided in this section, property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963.

(2) Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:

(a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.

(b) The property's current state equalized valuation.

* * *

(11) As used in this section:

(a) "Additions" means that term as defined in section 34d.

MCL 211.34d(1) defines "additions" as:

* * *

(b) For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all of the following:

(i) Omitted real property. As used in this subparagraph, "omitted real property" means previously existing tangible real property not included in the assessment. Omitted real property shall not increase taxable value as an addition unless the assessing jurisdiction has a property record card or other documentation showing that the omitted real property was not previously included in the assessment . . . .

(ii) Omitted personal property. As used in this subparagraph, "omitted personal property" means previously

existing tangible personal property not included in the
assessment. Omitted personal property shall be added to
the tax roll pursuant to section 154.

(iii) New construction. As used in this subparagraph,
"new construction" means property not in existence on the
immediately preceding tax day and not replacement con-
struction. New construction includes the physical addition
of equipment or furnishings, subject to the provisions set
forth in section 27(2)(a) to (o). For purposes of determining
the taxable value of property under section 27a, the value
of new construction is the true cash value of the new con-
struction multiplied to 0.50.

"Statutory language must be read according to its
ordinary and generally accepted meaning." *Michigan
Milk Producers Ass'n v Dep't of Treasury*, 242 Mich
App 486, 491; 618 NW2d 917 (2000). If the language is
clear and unambiguous, judicial construction is
neither appropriate nor permitted. *Id.*

Petitioner argues that where a given construction
project encompasses two tax years, the proper
method of assessment is to assess the property as it
exists at the close of the first year, and then assess
the remainder of the new construction in the second
year. The sum of the two assessments, plus the appli-
cable inflationary increase on the assessment for the
first year, results in a proper assessment. Petitioner
contends that by assessing the property for the 1999
tax year at fifty-six percent complete, and then reas-
sessing the property again for the 2000 tax year as
"complete new construction final," respondent fol-
lowed the method permitted for levying taxes on
property before 1995.

Respondent contends that the hearing referee sim-
ply interpreted MCL 211.34d(1)(b) in light of the reali-
ties and practicalities in valuing a partially completed

house. Respondent argues that the referee properly treated the difference between the value of the house as completed and the value of the partially completed house on December 31, 1998, as new construction.[2]

In *WPW Acquisition Co, supra,* 466 Mich 122, the Court addressed the constitutionality of MCL 211.34d(1)(b)(vii), which purported to include, in certain circumstances, an increase in the value of property because of increased occupancy by tenants within the meaning of "additions." The Court concluded that subsection 34d(1)(b)(vii) was unconstitutional because it was inconsistent with the meaning of the term "additions" as used in Proposal A. *WPW Acquisition Co, supra,* 466 Mich 122. The Court stated that when Proposal A was adopted on March 15, 1994, the GPTA defined "addition" as

all increases in value caused by new construction or a physical addition of equipment or furnishings and the value of property that was exempt from taxes or not included on the assessment unit's immediately preceding year's assessment role. [MCL 211.34d(1)(a), as then in effect.] [*Id.*]

The Court stated that, "[a]t the time that Proposal A was submitted to the voters, the General Property Tax Act established 'additions' as a technical legal term in the area of property taxation." *Id.* at 123. The Court noted that to recognize an expansive legislative power to redefine constitutional terms was inconsistent with the constitution's supremacy over statutes. *Id.* at 124-125.

Pursuant to Const 1963, art 9, § 3, property is to be assessed at not more than fifty percent of its true

---

[2] "New construction" is encompassed within the statutory definition of "addition."

cash value. For taxes levied in 1995 and each year thereafter, the taxable value, in the absence of a transfer of ownership of the parcel of property, is the lesser of the property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. *Id.*; MCL 211.27a(2)(a). Nothing in the language of subsection 27a(2)(a) provides an exception to this formula for new construction that is partially completed (and has a taxable value assessed) in one tax year and is fully completed in a subsequent tax year.[3] The Legislature provided a technical definition of the term "addition." Nothing in the language of subsection 34d(1)(b)(iii) supports the tribunal's finding that the taxable value of an addition, including new construction, can be determined by "treat[ing] as new construction the difference between the value of the house as completed at December 31, 1999, and the value of the partially completed house at December 31, 1998."

The portion of the house that was not completed at the time the property was assessed for the 1999 tax year and that was not included in the assessment of the taxable value of the property falls within the meaning of "addition" for purposes of determining the taxable value of the property for the 2000 tax year. Applying the plain language of the statute, the taxable value of the property for the 2000 tax year is the lesser of the 1999 taxable value multiplied by the lesser of 1.05 or the inflation rate, "plus the true cash value of the new construction multiplied to 0.50." MCL 211.27a(2)(a); MCL 211.34d(1)(b)(iii).

---

[3] A different situation would be presented if respondent had not assessed the FMV and the taxable value of the partially constructed house for the 1999 tax year.

II

Petitioner argues that the tribunal erred in denying her request to supplement the record after the hearing with evidence of a comparable sale. We disagree. 1999 AC, R 205.1342 provides, in pertinent part:

（2) A copy of the valuation disclosure or other written evidence to be offered in support of a party's contentions as to the subject property's value shall be filed with the tribunal and served upon the opposing party not less than 14 days before the date of the scheduled hearing. Failure to comply with this subrule may result in the exclusion of the evidence at the time of the hearing because the opposing party may have been denied the opportunity to adequately consider and evaluate the evidence before the date of the scheduled hearing.

This rule gives the tribunal discretion to exclude evidence that is untimely where "the opposing party may have been denied the opportunity to adequately consider and evaluate the evidence before the date of the scheduled hearing." The tribunal refused to accept the evidence pursuant to Rule 205.1342(2) on the ground that the evidence was not submitted to the tribunal and the opposing party at least fourteen days before the hearing date and admission of the evidence would be prejudicial. Because respondent did not have an opportunity to evaluate the evidence before the hearing, we find no error in the tribunal's decision to deny the admission of the evidence.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.