KOK v CASCADE CHARTER TOWNSHIP

Docket No. 249768. Submitted February 9, 2005, at Grand Rapids. Decided March 10, 2005, at 9:05 a.m.

Evonne E. Kok filed a petition in the Michigan Tax Tribunal (MTT) challenging Cascade Charter Township's tax year 2000 property tax assessment for her new home, which was constructed in 1998 and 1999. The MTT calculated the second-year addition to the property value by taking the appraised value at the end of the second year and deducting the true cash value of the construction completed at the end of the first year. The Court of Appeals, MURRAY, P.J., and SAWYER and FITZGERALD, JJ., in an opinion per curiam, remanded the case to the MTT for recalculation because the method used by the MTT in effect revalued the construction in the first year contrary to Const 1963, art 9, § 3. 255 Mich App 535 (2003). On remand, the MTT reduced the true cash value of the property for tax year 2000 from $769,400 to $682,498. The petitioner appealed, claiming that the assessment overvalued the construction in the second year and that the MTT added $22,876 in omitted property contrary to MCL 211.34d(1)(b)(i).

The Court of Appeals *held*:

1. The MTT was correct in determining that the cash payments actually paid to the contractor in the second year were immaterial to the value of the construction done in the second year.

2. The petitioner argued that the first year's assessment, based on fifty-six percent completion, was wrong because the house was eighty-eight percent complete. This reasoning merely means that the petitioner got a tax advantage after the first year of construction, so the petitioner shows no prejudice.

3. Because the MTT began with the value used for tax year 1999 and added an amount for the true cash value of the new construction, without relying on any postcompletion reappraisal of the value of the property, its determination on remand was correct relating to the new construction.

4. The petitioner is correct that the MTT erred by adding allegedly previously omitted property as additions for tax

year 2000. For the township to add those items, it had the burden of establishing that the purportedly omitted real property had existed at the time of, but was not included in, the prior year's assessment. Because the township failed in its burden, the property was improperly added to the assessment by the MTT.

Remanded for reduction of assessment for omitted property.

1. TAXATION — REAL PROPERTY — VALUATION OF NEW CONSTRUCTION.

   The cash payments made to a contractor for construction during a taxable year are immaterial to the assessment of the true cash value of the construction done in that year.

2. TAXATION — REAL PROPERTY — OMITTED PROPERTY.

   For a taxing authority to add purportedly omitted real property to its assessment of real property, the authority must establish that the purportedly omitted real property had existed at the time of, but was not included in, the prior year's assessment (MCL 211.34d).

*Miller Johnson, Snell & Cummiskey* (by *Peter J. Kok*) and *Henry L. Guikema, P.C.* (by *Henry L. Guikema*), for the petitioner.

*Law, Weathers & Richardson, P.C.* (by *Ingrid A. Jensen*), for the respondent.

Before: SCHUETTE, P.J., and FITZGERALD and BANDSTRA, JJ.

BANDSTRA, J. This matter is before this Court a second time, following an opinion that remanded it to the Michigan Tax Tribunal. *Kok v Cascade Charter Twp*, 255 Mich App 535; 660 NW2d 389 (2003). The case involves the construction of a residence that spanned two tax years. Previously, this Court concluded that the tribunal had improperly valued the "new construction" in the second tax year by reappraising the property and subtracting the value it had as partially completed in the first tax year from the value it had as fully completed. *Id.* at 543. This Court remanded the case to the tribunal for a proper determination of "the true cash

value of the new construction" as required by the statute, MCL 211.34d(1)(b)(iii). *Id.* at 543-544.

At the time the property was assessed for the first tax year (i.e., tax year 1999, as of December 31, 1998), the house was estimated to be fifty-six percent complete and the assessment was set at fifty-six percent of its true cash value[1] when completed. On remand, the tribunal determined that the true cash value of the new construction (the completion of the project) was the forty-four percent of the true cash value of the completed project that had not been assessed previously. That amount was added to the previous year's assessment in determining the assessment for tax year 2000. We conclude that this approach was consistent with this Court's prior opinion and also with applicable constitutional and statutory provisions. The tribunal further determined that various components of the completed residence were "omitted property," MCL 211.34d(1)(b)(i), and that their true cash value should be added in assessing the property for tax year 2000. We conclude that this was incorrect and remand for entry of an order reducing the assessment accordingly.

### STANDARD OF REVIEW

Absent an allegation of fraud, this Court's review of a tax tribunal decision is limited to determining

---

[1] In this Court's previous opinion, the panel used the term "fair market value," *id.* at 536, which is functionally the same as "true cash value," *CAF Investment Co v State Tax Comm*, 392 Mich 442, 450; 221 NW2d 588 (1974), and "actual market value," *WPW Acquisition Co v City of Troy*, 466 Mich 117, 122; 643 NW2d 564 (2002). Here, we use "true cash value" because that is the term employed in Const 1963, art 9, § 3, as well as the implementing statutory sections applicable to this case, MCL 211.34d(1)(b)(i) and (iii).

whether the tribunal committed an error of law or applied the wrong legal principles. Const 1963, art 6, § 28; *Schultz v Denton Twp*, 252 Mich App 528, 529; 652 NW2d 692 (2002). While statutory interpretation is a question of law that is reviewed de novo, we generally defer to the tax tribunal's interpretations of the statutes it administers and enforces. *Id.*

ANALYSIS

On remand, the tribunal entered an order reducing the true cash value of the property as of December 31, 1999, for tax year 2000, from the previously established level of $769,400 to $682,498. The tribunal calculated that value by beginning with the true cash value of the property with the construction fifty-six percent complete on December 31, 1998, (for tax year 1999), $409,400, adjusting that amount with a 1.9 percent inflation factor,[2] and making two additions to the resulting value, both of which the property owner, petitioner Evonne E. Kok, contests on this appeal. First, the tribunal added $242,445, which represented the forty-four percent of true cash value of the building project (exclusive of the cost of the land) that was uncompleted as of December 31, 1998, and which was completed during 1999. To arrive at that amount, the tribunal simply multiplied the prior year's true cash value of the building as if one hundred percent complete ($550,998), upon which the assessed value for tax year 1999 had

---

[2] In her briefs on appeal, petitioner mentions a 1.6 percent inflation factor without explanation, in the face of a record that consistently employs the 1.9 percent factor. However, "a mere statement without authority is insufficient to bring an issue before this Court." *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). To the extent that petitioner is trying to raise some argument in this regard, we need not address the issue, and decline to do so. *Id.*

been based, by forty-four percent.[3] Second, the tribunal added $22,876 in "omitted property." We consider each of these additions separately.

### "NEW CONSTRUCTION"

Const 1963, art 9, § 3, as amended by Proposal A, places a cap on the increase of taxable value of real property from year to year notwithstanding any possible greater increase in the true cash value of that property. See *Kok, supra* at 538-539. The constitutional provision allows adjustments for "additions" from year to year, and implementing legislation has been enacted defining those additions. *Id.* at 539-541. The statute at issue here allows an "addition" to be made for "new construction," defined as

> property not in existence on the immediately preceding tax day and not replacement construction. New construction includes the physical addition of equipment or furnishings . . . . For purposes of determining the taxable value of property . . . , the value of new construction is the true cash value of the new construction multiplied by 0.50. [MCL 211.34d(1)(b)(iii).]

Petitioner claims that the tribunal erred by simply taking the true cash value used for the 1999 tax year assessment, multiplying it by the forty-four percent factor that had been at that time applied to account for the portion of the project not yet completed, and adding that amount as the true cash value of the "new construction," i.e., the completion of the project, that occurred in 1999. We disagree.

---

[3] No inflation factor was applied to the forty-four percent amount. No argument is raised on appeal regarding the approach taken in this regard, and we express no opinion on it. Further, we do not address the slight discrepancy in the tribunal's calculation of the forty-four percent amount.

Petitioner makes a number of arguments in this regard, none of which has merit. First, petitioner claims that the tribunal improperly failed to consider an affidavit from the building contractor that completed the project stating, "The cost of construction done in 1999 was $194,538." The tribunal found that affidavit to be "immaterial," noting that "petitioner's belief that the amount paid (cost) to the contractor for work in 1999 should limit the increase in taxable value does not comport to any appraisal industry standard in calculating true cash value." We agree. As she did below, petitioner fails to make any argument on appeal that the approach advanced complies with any appraisal industry standard. Further, as pointed out by respondent, the amount paid to a builder might vary because of factors wholly unrelated to the true cash value of a project. For example, a contractor's fee might well be affected by the negotiating skill of the property owner or the work load of the contractor. Or payments during a multiyear construction project might be front loaded into earlier years or back loaded into later years for various reasons. With those concerns in mind, and in the absence of any authority to support the approach for which petitioner argues, we cannot conclude that the tribunal erred in failing to consider the contractor's affidavit.

Petitioner further argues that the tribunal erred by concluding that the construction project was fifty-six percent complete on December 31, 1998, when there was also evidence in the record suggesting that it was eighty-eight percent complete. However, we fail to see how any discrepancy in this regard caused petitioner any harm. The record consistently shows, and petitioner does not contest, that the fifty-six percent figure was the basis for the assessment imposed for the first tax year. Had the estimate of the percentage completed

been higher, the true cash value for the first year would simply have been correspondingly higher, resulting in a higher taxable value for that tax year. And, of course, petitioner would have received no benefit from a lower percentage of completion being attributed to the following tax year (twelve percent rather than forty-four percent), because the base amount (from the first year) to which the lower true cash value of the second year's completion of the project would have been added would have been concomitantly higher. In the final analysis, petitioner's argument only suggests that the true cash value calculated for tax year 1999 was too low, not that that calculation for tax year 2000 was too high.

Finally, petitioner argues that the approach used by the tribunal after remand was inconsistent with this Court's directive in the previous appeal. We disagree. At issue previously was whether respondent Cascade Charter Township "was precluded from reappraising the entire property for the 2000 tax year as new construction without regard to the taxable value of the partially completed construction assessed in the 1999 tax year." *Kok, supra* at 538. This Court concluded that respondent was so precluded, noting that "[n]othing in the [statutory] language" defining "new construction" allowed the value of new construction to be determined simply by comparing the true cash value of a residence before and after completion of that new construction. *Id.* at 543. Instead, the tribunal was directed to begin with the value used for tax year 1999 and add an amount for the "true cash value of the new construction," i.e., the completion of the construction, during 1999. *Id.* The tribunal complied with that directive using the forty-four percent approach to determine the true cash value of the 1999 completion of the project; it

did not rely on any postcompletion reappraisal of the value of the property as our previous opinion proscribed.

The approach used by the tribunal following remand furthers the purposes of Const 1963, art 9, § 3, as amended by Proposal A. See, generally, *Kok, supra* at 538-541. The Proposal A amendment "operates to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the 'taxable value' of the property may increase each year, even if the 'true cash value,' that is, the actual market value, of the property rises at a greater rate." *WPW Acquisition Co v City of Troy,* 466 Mich 117, 121-122; 643 NW2d 564 (2002). The increase in taxable value in the second tax year was computed on the basis of the previous year's true cash value. It was unaffected by any increase in true cash value greater than that allowed by the constitutional cap during the second year.[4]

Thus, we reject petitioner's arguments. And we reject what seems to be the overall gist of those arguments, taken together. Petitioner does not contest the true cash value of the completed project as it was determined and used to calculate the assessments for the tax years at issue.[5] Instead, it seems petitioner is seeking to benefit

---

[4] In contrast, the constitutional cap was disregarded by the approach rejected in *Kok.* Use of a new postcompletion reappraisal of the property resulted in a determination that the true cash value for tax year 2000 was $769,400, far in excess of the true cash value used for the preceding tax year as adjusted by the 1.9 percent inflation factor ($651,888 times 1.019 equals $664,274). That excessive true cash value was used to assess an excessive taxable value of the property for tax year 2000.

[5] In fact, the record shows that petitioner's own appraiser placed the December 31, 1999, value of the completed residence at $700,000, well above the figure established just one year earlier by respondent ($651,888) and used to calculate the assessments for the tax years 1999 and 2000.

from the fact that the building project spanned two tax years, using Proposal A and its implementing legislation to make arguments that would have been simply unavailable if the project had been completed by December 31, 1998, rather than a few months later. Those arguments would hold respondent accountable for any discrepancies between assumptions made regarding the percentage of the project that was completed on December 31, 1998, assumptions required for tax assessment purposes, and the "actual" percentage of completion as of that date. We do not conclude that either Proposal A or the "new construction" language of the statute imposes such a standard of precision on a taxing authority. As long as the purposes of Proposal A and the statute are satisfied, as they were here, taxing authorities must be free to make some estimations as a necessary part of the process when assessing a multiyear building project.[6]

### "OMITTED PROPERTY"

Petitioner argues that the tribunal erroneously added items included in the completed construction (piers, intercom and central vacuum systems, and patio blocks) as "additions" for the 2000 tax year valuation. We agree.

The statute allows for taxable value to be adjusted for "omitted property" additions, defined as

---

[6] We note that, in this case, respondent's estimation that the building project was forty-four percent incomplete at the end of 1998 was only slightly different than the percentage that might be derived from the builder's statement of cost for completion in 1999. The total cost of the construction used by respondent to assess taxes, uncontested by petitioner, was $550,988 and the stated builder cost for 1999 ($194,538) is thirty-five percent of that total. As explained earlier, any differences, including this slight one, did not prejudice petitioner.

previously existing tangible real property not included in the assessment. Omitted real property shall not increase taxable value as an addition unless the assessing jurisdiction has a property record card or other documentation showing that the omitted real property was not previously included in the assessment. The assessing jurisdiction has the burden of proof in establishing whether the omitted real property is included in the assessment. [MCL 211.34d(1)(b)(i).]

Under the plain language of this statute, respondent had the burden of proof to establish that the purportedly "omitted" real property had existed at the time of, but was not included in, the prior year's assessment. The record includes no such evidence and, in fact, the tribunal did not determine that the contested items were previously in existence. Instead, it merely concluded that they were "unknown as of the original construction inspection." The record does not show that the items were in existence but omitted from the assessment on December 31, 1998. It appears they were simply part of the completion of construction in 1999. We cannot conclude that these items were "omitted property" under the statutory definition, but, instead, must consider them to be part of the "new construction" addition for tax year 2000. As such, the value of these items was already accounted for in the "new construction" addition to true cash value previously discussed.

CONCLUSION

The true cash value of petitioner's property for tax year 2000 must be reduced by the amount improperly attributed to "omitted property," i.e., $22,876. We otherwise affirm the decision of the tribunal and remand for entry of an order consistent with this opinion. We do not retain jurisdiction.