# STATE OF MICHIGAN

# COURT OF APPEALS

BAY CITY YACHT CLUB INC.,

Plaintiff-Appellant,

v

BANGOR TOWNSHIP,

Defendant-Appellee.

UNPUBLISHED
January 11, 2018

No. 335551
Tax Tribunal
LC No. 15-000528-TT

Before: M. J. KELLY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Petitioner, Bay City Yacht Club, Inc., appeals by right from the final order and judgment of the Michigan Tax Tribunal denying it a property tax exemption under MCL 211.7g for its property located in Bay City at 3315 Shady Shore Road. For the reasons stated in this opinion, we vacate the Tribunal's final opinion and judgment and remand for further proceedings.

## I. BASIC FACTS

This case concerns whether the Tribunal erred by determining that the Bay City Yacht Club had failed to prove it was entitled to a tax exemption under MCL 211.7g. The statute provides a property tax exemption for "[t]he value of a seawall, jetty, groin, dike or other structure whose primary purpose is to prevent or control erosion or prevent or control inundation or flooding on property affected by waters or levels of the Great Lakes or their connecting waters and tributaries as affected by levels of the Great Lakes is exempt from taxation." MCL 211.7g. It further provides that "[t]he department of natural resources shall, when requested by the owner or the assessor, determine if such seawall, jetty, groin, dike, or other structure has as its primary purpose the prevention or control of erosion." MCL 211.7g.

In support of its claim that it was entitled to the exemption, the Bay City Yacht Club presented evidence that it made a request to the Department of Natural Resources (DNR) for a determination of the primary purpose of its seawalls, and the DNR responded via a letter dated March 15, 2016. The letter provides:

The DNR has reviewed the information and photographs you submitted as well as the 1982 permit issued by Bay County (Permit No. 294), the 1982 permit issued by the Department of the Army (Permit No. 82-20-3), and the 2000 permit application and permit issued by the Michigan Department of Environmental Quality (Permit No. 00-09-0005-P).

After this review, the DNR has determined that the seawalls or bulkheads have as their primary purpose the prevention or control of erosion.

In response, Bangor Township presented evidence that its assessor did not use the letter when making his valuation determination because it was issued after the tax day for 2016, i.e., December 31, 2015. Additionally, the assessor testified that after receiving the letter he sent the DNR a letter expressing his "concerns" with the DNR's determination. Included in the letter was "[a]n aerial photograph indicating where the steel seawalls were." The assessor explained that he informed the DNR that he felt the seawalls' "primary purpose was not for soil erosion but for the benefit of a yacht club." The Bangor Township assessor additionally contacted the State Tax Commission regarding the exemption under MCL 211.7g. The assessor stated that the Commission quickly contacted him because it was very concerned about the issue. He added that the Commission "immediately" arranged a meeting with the DNR. On July 11, 2016, the assessor received a letter from the DNR stating that the DNR had met with the Commission and indicating that the DNR understood the concerns expressed in the assessor's letter. Regardless, as of the date of the hearing, the DNR had not contacted the assessor about reviewing its earlier determination. Accordingly, the only evidence produced at the hearing was that the DNR had determined that the primary purpose of the Yacht Club's bulkheads and seawalls was for erosion prevention or control and testimony from the assessor that he disagreed with the DNR's analysis.

On August 24, 2016, after the proofs in the instant matter were closed, the DNR sent a letter to the assessor, which was received on August 29, 2016.[1] The letter amended the DNR's prior determination regarding the Yacht Club's seawalls and bulkheads. It stated:

On March 15, 2016, the Michigan Department of Natural Resources (DNR) responded to your request to provide a determination under MCL 211.7g regarding the primary purpose of seawalls or bulkheads located at the Bay City

---

[1] The Bay City Yacht Club raises valid concerns about how the August 2016 letter came into existence. Specifically, shortly after receiving an unfavorable determination by the DNR, the Bangor Township tax assessor sent a letter to the DNR asking it to reconsider its decision. The Bay City Yacht Club was not copied on the letter, nor does it appear that it was promptly informed that a redetermination was being sought. Thereafter, additional communications occurred between Bangor Township, the DNR, and the State Tax Commission, with the end result being that the DNR issued a redetermination regarding the Bay City Yacht Club's entitlement to the exemption in MCL 211.7g. We find that, even if no undue influence was brought to bear on the DNR, conducting the redetermination without including the Bay City Yacht Club was improper, especially given that there was ongoing litigation regarding the ad valorem taxes assessed by Bangor Township against the Yacht Club.

Yacht Club, 3315 Shady Shore Road, Bay City, Michigan 48706 . . . . The purpose of this correspondence is to amend the DNR's March 15 determination.

At the request of the Bangor Township Assessor's Office and the Michigan Department of Treasury, the DNR has conducted further review of the relevant seawalls or bulkheads, including a site visit on August 10, 2016. Based on information obtained during that further review, the DNR now amends its March 15, 2016 determination as follows:

- Only those seawalls or bulkheads that do not include boat docking have as their primary purpose the prevention of erosion control, and

- Those seawalls or bulkheads that provide boat docking are modified or designed to provide benefits other than erosion control.

Bangor Township filed a motion to reopen the proofs so that the August 24, 2016 letter could be considered by the Tribunal. Although the Yacht Club opposed the motion, the trial court granted the motion to reopen the proofs and accepted the August 24, 2016 letter into evidence. The Tribunal found that the letter was irrelevant to the issue at hand because it did not have a retroactive effect, but the Tribunal admitted it because it felt that its admission would be an efficient administration of justice. Thereafter, the Tribunal issued a final opinion and judgment finding that the property's true cash value (TCV) for the 2015 tax year was $1,439,380, and the TCV for the 2016 tax year was $1,483,220. The Tribunal acknowledged the letters from the DNR, but again stated that it found them irrelevant for the tax years at issue and did not consider them further.

## II. SEAWALL EXEMPTION

### A. STANDARD OF REVIEW

The petitioner in a tax case must prove it is entitled to a tax exemption. *Podmajersky v Dep't of Treasury*, 302 Mich App 153, 164-165; 838 NW2d 195 (2013). "In the absence of fraud, review of a decision by the Tax Tribunal is limited to determining whether the tribunal erred in applying the law or adopted a wrong principle; its factual findings are conclusive if supported by competent, material, and substantial evidence on the whole record." *Mich Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 476; 518 NW2d 808 (1994). We review de novo questions of statutory interpretation. *Elba Twp v Gratiot County Drain Comm'r*, 493 Mich 265, 278; 831 NW2d 204 (2013).

### B. ANALYSIS

Relying on *Davis v State Employees' Retirement Bd*, 272 Mich App 151; 725 NW2d 56 (2006), the Tribunal concluded that because there was no express retroactivity put forth in MCL 211.7g or the DNR's letters, "the exemption or lack of exemption conclusion does not apply to tax years in issue in this appeal." However, *Davis* concerned whether a *statutory amendment* could be applied retroactively. *Id*. at 152. Here, a statutory retroactivity analysis is immaterial because MCL 211.7g was last amended in 1976. See 1976 PA 165. Therefore, the statute had existed in its present form for at least 40 years at the time the Tribunal rendered its retroactivity

analysis in this case. As such, the Tribunal's reliance on *Davis's* statutory retroactivity analysis to interpret MCL 211.7g and the DNR's letters was inappropriate.

Moreover, MCL 211.7g only states that "[t]he department of natural resources shall, when requested by the owner or the assessor, determine if such seawall, jetty, groin, dike, or other structure has as its primary purpose the prevention or control of erosion." Absent from the language chosen by the Legislature is any indication that the DNR's determination is restricted to a prospective application. Instead, this language allows for the DNR to make a determination applying retroactively *or* prospectively. This is in contrast to MCL 211.7h, which provides an exemption for solar, wind, or water energy conversion devices, and requires the state tax commission, with the approval of the department of commerce, to issue an exemption certificate, and expressly provides that a taxpayer may only claim an exemption after December 31 of the year in which the certificate is issued. See MCL 211.7h. "Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). Thus, the fact that MCL 211.7g does not contain a timing restriction, but MCL 211.7h does, indicates that there is a timing restriction in MCL 211.7h, but not in MCL 211.7g. See also *United States Fidelity Ins & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009) (noting that the Legislature's use of different terms suggests different meanings were intended). Therefore, we conclude that under MCL 211.7g, the DNR's determination may apply either prospectively or retroactively.

Resolution of the issue, therefore, depends on the facts surrounding the request to the DNR, and the language used in the DNR's determination. For example, under the statutory language, when making a request for a determination, a taxpayer or assessor could expressly request that the DNR make a determination for a prior tax year, a current tax year, or both. In addition, when making its determination, the DNR could expressly state that its determination was made for a specific time period. Here, however, the exact language of the Yacht Club's request for a determination from the DNR is not included in the record. Further, the DNR did not expressly state that its March 2016 determination or its August 2016 redetermination were to be applied retroactively to the 2015 and 2016 tax years. In the absence of direct evidence regarding the intended timeframe of the determination, the Tribunal concluded that the DNR's determination was irrelevant to whether the primary purpose of the Yacht Club's seawalls or bulkheads was for the prevention or control of erosion for the 2015 and 2016 tax years.

However, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Here, the March 2016 letter was written in response to a request from the Yacht Club to make a determination regarding the primary purpose of the Club's seawalls or bulkheads. In addition, the DNR's letter makes clear that it considered documentary evidence dating back to 1982 when making its determination, which allows for an inference that its determination that the primary purpose of the seawalls or bulkheads was to prevent or control erosion starting in 1982 and going forward. Thus, although nothing in the letter directly stated that the determination would apply retroactively or prospectively, it is reasonable to interpret the letter as indirectly stating that the DNR's determination applied retroactively given that it referenced historic documents as the basis for the decision.

Accordingly, we conclude that the March 2016 letter was relevant to the question of whether the Bay City Yacht Club was entitled to the exemption under MCL 211.7g, and the Tribunal erred by declining to consider it.

Similarly, the August 2016 letter was also relevant to whether the exemption in MCL 211.7g applied to the 2015 and 2016 tax years. That letter was written in response to Bangor Township and the Department of Treasury's request that the DNR reconsider the issue. The letter stated that the DNR had reviewed additional information and had conducted a site visit on August 10, 2016, and that, based on the new information it was amending its March 2016 determination.

However, unlike the March 2016 letter, the August 2016 letter was received after the proofs were closed, and the Yacht Club was given no opportunity to rebut it because the Tribunal concluded that the letter was irrelevant to the issue at hand. On appeal, the Yacht Club challenges the decision to reopen the proofs, contending that the decision deprived it of due process because it was given no opportunity to respond to the evidence and was prejudiced by its admission. We agree that the admission of the letter without allowing the Yacht Club an opportunity to rebut it constituted a due process violation. When deciding whether to reopen proofs, a court should consider whether reopening the proofs would cause unfair surprise or prejudice to the opposing party. *People v Collier*, 168 Mich App 687, 694-695; 425 NW2d 118 (1988). Here, there is no question that the admission of the August 2016 letter is prejudicial to the Yacht Club. The August letter concludes that, contrary to the March 2016 determination, the primary purpose of the Club's bulkheads or seawalls is not for the prevention or control of erosion, which means that the Club cannot receive an exemption for the full value of the seawalls or bulkheads.[2] Because the Club was plainly prejudiced by the reopening of the proofs to admit the letter, the Club should have been permitted to submit further proofs in rebuttal. See *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005) (indicating that due process may not be satisfied when a party lacks a meaningful opportunity to be heard). See also *Kok v Cascade Charter Twp*, 255 Mich App 535, 544; 660 NW2d 389 (2003) (stating that the Tribunal did not err in excluding untimely evidence because the opposing party did not have an opportunity to evaluate it before the hearing).

In sum, the Tribunal's findings were not supported by competent, material, and substantial evidence because the Tribunal erroneously declined to consider the March 2016 letter despite the fact that it was directly relevant to determining the primary purpose of the Yacht Club's seawalls. The Tribunal also erred in interpreting MCL 211.7g to require the DNR's determination to only be given prospective effect. Accordingly, we vacate the Tribunal's decision, and remand for further proceedings. On remand, the Tribunal shall consider the March 2016 letter when deciding whether the Bay City Yacht Club is entitled to an exemption under MCL 211.7g. Further, given that the Tribunal's decision to reopen the proofs to admit the August 2016 letter was premised on its erroneous conclusion that the letter was irrelevant for the

---

[2] We note that the third sentence in MCL 211.7g provides "[t]hat portion of structures which are modified or designed to provide benefits other than erosion control or flood prevention are not exempt from assessment for property tax." Thus, the statute contemplates a partial exemption for seawalls or bulkheads whose primary purpose is not to prevent or control erosion.

2015 and 2016 tax years, we vacate that decision. On remand the Tribunal must consider anew Bangor Township's request to reopen the proofs. In doing so, the Tribunal shall ensure that all parties are afforded appropriate due process protections.

Vacated and remanded for further proceedings. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra